# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBUS ALLEN, JR. | Case No.: 1:13-cv-00012-AWI-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| STANISLAUS COUNTY, et al., | |
| Defendants. | [ECF Nos. 22, 34, 37, 38] |

Plaintiff Columbus Allen, Jr. is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.
## BACKGROUND

This action is proceeding on Plaintiff's initial complaint, filed January 3, 2013, against Defendants County of Stanislaus, Puthuff, Christianson, Captain Duncan, and Lieutenant Lloyd for denial of outdoor exercise, against Defendants Lieutenant Suarez, Sergeant Galles, Sergeant Truffa, Mauldin, Meyers, and Williams for a due process violation for denial of access to telephone privileges, against Defendants Sergeant Radza, Williams, Aziz, Maze, and Cardoza for failure to protect, and against Defendants Lieutenant Clifton, Sergeant Radza, and Cardoza for retaliation.

On July 29, 2014, Defendants County of Stanislaus, Puthuff, Christianson, Duncan, Lloyd, Suarez, Clifton, Radza, Truffa, Cardoza, Aziz, Mauldin, Maze, McLeland, Meyers, and Williams filed

a motion to dismiss portions of the complaint.

On October 30, 2014, Defendant Galles filed a motion to dismiss the complaint.

Plaintiff, by way of response to the Court's order to show cause, filed an opposition on November 3, 2014, and Defendants filed an reply on November 10, 2014.

## II.

## DISCUSSION

### A.   Motion to Dismiss Standard Under Rule 12(b)(6)

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), *cert. denied*, 132 S.Ct. 1762 (2012). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

///

///

**B.     Allegations of Complaint**

On February 17, 2006, Plaintiff was arrested and booked into Stanislaus County Jail at approximately 5:45 p.m.. Upon his arrival, he was escorted directly to a "safety cell/rubber room", stripped naked, and provided a security jacked, contrary to the guidelines and standards required by state law. Plaintiff was retained in the cell for approximately seventeen hours and denied every request to utilize the telephone services contrary to state law. This occurred over a period of one day which allowed investigators more time and opportunity to conduct their investigation and acquire materials in hopes of obtaining an incriminating statement from Plaintiff.

On February 18, 2006 at approximately 11: 15 a.m., Sergeant Truffa and Deputy Williams escorted Plaintiff for fingerprints after being "cleared" from the safety cell. During this time, one of the officers announced "deadman walking," and the other stated "time to see how things work around here boy."

Plaintiff was informed through personal accounts that another African-American, Kevin Tubbs, charged with a single murder, and did not meet the criteria for safety cell subjection, was kept there upon his arrival at SCMJ, and held incommunicado for a significant amount of time. However, Caucasians, Jesse Frost and Cameron Terhune, were both charged with multiple murders and meet the criteria for safety cell subjection per state law, but were never subjected to the safety cell nor held incommunicado. Plaintiff further alleges on April 19, 2009, the Modesto Bee reported that former deputy Craig Prescott, an African-American, died from injuries he sustained after his former co-workers reclassified him, after four days in custody, and attempted to remove him to the safety cell from general population.

Plaintiff was subsequently classified to maximum security, based solely on his pending charges, and was escorted by Sergeant Truffa and Williams from booking to a single cell, upon the approval of Lieutenant Suarez.

The maximum security tier was mainly composed of "Nazi low-riders" and "Skin-heads" which are White Supremacist prison gangs who consider African-Americans to be a threat and enemy regardless of gang affiliation or lack thereof. Plaintiff was the only African-American on the maximum security tier.

Stanislaus County Sheriff Department policy required that all maximum security inmates be secured before exiting cells at all times and during escort. The policy of moving maximum security inmates during shower time requires one deputy secure the inmate and escort him to the shower while a second deputy operates the control panel to open the cell and shower doors.

On February 26, 2006, after escorting Plaintiff to the shower in restraints, Deputies Aziz and Williams ignored maximum security movement policy during shower time and released an inmate, "R.D.", from his cell without restraints. He was holding only a bottle and other "shower materials," and physically and verbally assaulted Plaintiff with urine and feces squeezed from the bottle, while making degrading epithets towards African-Americans, stating "get off our tier fucking nigger." Plaintiff was locked in the shower and unable to protect himself during the incident.

Neither Aziz or Williams charged "R.D." with a crime or notified the district attorney as required by law. Deputy Williams assured the perpetrator that he had nothing to worry about because he would be on a bus to prison before a disciplinary hearing could take place.

Plaintiff was promptly moved from maximum security tier to another tier in a two man cell with inmate Tommy Nichols, who informed Plaintiff that he had been housed on the maximum security tier and was assaulted in a similar fashion, and deputy M. Sanders informed Nichols that Plaintiff would be housed with him before the attack occurred.

Following Plaintiff's request, he was moved to another one man cell on the first floor within a month and remained there for approximately fifteen months. During this time, Plaintiff made several requests to participate in outdoor exercise which had been denied to him since him arrival at SCMJ.

Plaintiff was informed per policy that due to his maximum security status, he was required to attempt exercise twice per week in "full restraints," which includes leg irons, hand cuffs, and being enclosed within a "black box" to restrict any wrist movement. The box is then padlocked to a steel chain wrapped around the waist, for a total of three hours per week.

Plaintiff sustained several injuries while exercising as required by prison policy, including injuries to his shoulders and elbows from falling while shuffling (attempting to job), injury to his wrists from bouncing ball, and injuries to his Achilles tendons from simply walking.

4

Per state law, the county, by and through former Sheriff Puthuff and current Sheriff Christianson, was required to have a classification plan which allows for appeals and evaluations of classification every thirty days.  On March 30, 2009, Lieutenant Lloyd testified under oath and penalty of perjury, in part, that zero inmates are allowed classification evaluations no less than thirty days from the last request, and classification criteria for maximum security and administrative segregation are virtually identical in regard to the movement policy, but administrative segregation is not required to remain in restraints on the yard.

Plaintiff was denied all requests for classification evaluations by all prison staff including, Sergeant Radza on August 3, 2007 and August 6, 2007, Lieutenant Clifton on August 7, 2007, and Captain Duncan on August 13, 2007.

On August 13, 2007, Deputy Cardoza and another unknown officer, moved Plaintiff back to maximum security, and placed in a cell directly between a Nazi-lowrider and a Skin-head.  He was immediately "gassed" by Jeremy Spray before Deputy Cardoza could leave the tier, as the hostile Whites yelled to Cardoza "get that nigger off our tier or he's gonna get it again!" to which Cardoza replied "go ahead, we'll just move ya, he ain't leavin."

The perpetrator was moved off the tier.  Deputy Cardoza sought to minimize the risk of further attack by moving Plaintiff to the cell directly in front of the control box.  During the move, Plaintiff pleaded with Deputy Cardoza to remove him from the tier and refused to enter the cell.  Deputy Cardoza responded with a threat to use the taser gun for non-compliance.

On August 18, 2007, October 2, 2007, and October 4, 2007, with unknown deputies operating the control box, Plaintiff was assaulted in his cell directly in front of the control box at shower time.

Plaintiff submitted grievances to secure his person and request for classification evaluation, following each attack.  On August 20, 2007, Plaintiff's grievance was denied by Deputy Escarcez stating "you cannot grieve your housing."  Sergeant Radza denied the grievances on August 22, 2007 and October 8, 2007, stating "your classification is appropriate and will not be lowered at this time."  "It is impractical to cuff inmates going back and forth from the shower."  "If you're gassed … you may press charges."  On October 31, 2007, Lieutenant Clifton denied the grievance affirming the previous responses by his subordinates.

5

1    Plaintiff was personally informed and alleges that a maximum security inmate, David Hess, attacked an inmate before staff and the victim, a White guy, refused to press charges. The officer who witnessed the crime pressed charges and informed the district attorney contrary to the claims of Sergeant Radza.

Plaintiff complained of emotional distress and mental anguish due to the combination of the lack of outdoor exercise and the continuous attacks in the hostile environment.

On April 10, 2010, and April 15, 2010, Plaintiff was accused of gassing White inmates. Both victim inmates were promptly moved from the tier while Plaintiff was charged with several rule violations including, assault, battery, hate crimes, violation of housing unit rules, and violation of inmate rules.

Plaintiff sought classification evaluations and outdoor exercise for a second time approximately one year later. His requests were again denied. Sergeant Radza denied the request on October 17, 2008, stating "your classification will remain the same," and on October 21, 2008, stating "this [issue] has already been answered." Lieutenant Clifton denied the request on October 30, 2008, stating "this was answered by myself and filed August 7, 2007 and [approved] and filed by Cpt. Duncan on [August 13, 2007]. The requests and answer is the same." Lieutenant Lloyd denied Plaintiff's requests on October 30, 2009, deferring to the responses of his subordinates.

Plaintiff appealed to Captain Duncan, who replied on December 4, 2008, stating "this issue has been adequately addressed. The facility is in compliance with policy which is supported by County Counsel." Captain Duncan directed Plaintiff to request copies of the departments classification procedures from Sergeant Wright who stated on June 22, 2009, "your classification is reviewed every 60 days," and claimed "'files and records' are confidential in accordance with Gov. [Code] 6254(f)." Plaintiff appealed to Lieutenant Lloyd who stated on June 26, 2009, "there is no other portion that will be released to you." Plaintiff then appealed back to Captain Duncan who simply referred to Lieutenant Lloyd's last response and confirmed on July 13, 2009.

Plaintiff filed claims with the County Board of Supervisors requesting redress on November 25, 2008, and March 2, 2009, which were denied.

In December 2008, the local newspaper published an article reporting the allegations in Plaintiff's claim filed November 25, 2008, and the Stanislaus County Civil Grand Jury conducted an investigation in the months of January through March 2009.

The grand jury reported in part: "1) '"high-risk' inmates were not allowed to exercise without restraints," and 2) "there were no clear 'written' guidelines and standards for the classification of inmates" [at SCMJ], stating "the existing procedures appears to be an ad-hoc process failing to employ qualified staff specifically trained to make these decisions." The grand jury recommended development of classification guidelines and training, and that high-risk inmates be allowed exercise without restraints.

Sheriff Christianson responded to the grand jury report on July 24, 2009, stating that more than 30 pages of formal policy, procedure, and training specifically related to the classification of inmates in the "Stanislaus County Detention Facilities" have existed for years; and cited "the classification unit [sergeant] provides updates and schedules bi-monthly meetings with the entire unit in attendance. Classification deputies are required to provide a unit report after every shift and the [sergeant] reviews the unit reports on a daily basis … the classification deputies work as a team to ensure the safety and security of our facilities. The inmates are housed in the most appropriate locations available." Christianson admitted "max-sec inmates, as a matter of longstanding policy, are to be in full restraints while on the yard. The [grand jury's] recommendations require further analysis. Staff is reviewing this policy with County Counsel."

On September 15, 2009, the County incorporated the same response of Sheriff Christianson, verbatim in its "Action Agenda Summary" addressing the grand jury's findings and recommendations.

On October 2, 2009, Plaintiff was finally allowed exercise on the yard without restraints per the grand jury recommendation.

C.   **Prior Screening Order**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity, 28 U.S.C. § 1915A(a), and it must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

1. from a defendant who is immune from such relief, 28 U.S.C. § 1915A(b)(1), (2).

   The Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable retaliation claim against Defendants Rodriguez, Reyna, Rasey and Lawrence. (ECF No. 13.) Because the screening standard does not differ from the standard governing Rule 12(b)(6) motions, Watison, 668 F.3d at 1112, the Court generally views motions to dismiss for failure to state a claim with disfavor. Unless a motion sets forth new or different grounds not previously considered by the Court, it is disinclined to rethink what it has already thought. Sequoia Forestkeeper v. U.S. Forest Service, No. CV F 09-392 LJO JLT, 2011 WL 902120, at *6 (E.D.Cal. Mar. 15, 2011) (citing United States v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998)) (quotation marks omitted). This case presents no exception.

   In presenting their motion, Defendants submit that some of Plaintiff's claims fail as a matter of law. Specifically, Plaintiff fails to plead facts sufficient to constitute a cognizable claim for relief under either 42 U.S.C. § 1985(3) or § 1986. Further, a portion of Plaintiff's Second Claim and all of his Third Claim should be dismissed without leave to amend for failure to exhaust his administrative remedies under the Prison Litigation Reform Act with regard to an alleged deprivation of his access to telephone communication. In addition, Plaintiff's claim against Lieutenant Duncan fails because Plaintiff fails to allege any action by Lieutenant Duncan other than reviewing and denying Plaintiff's administrative grievances with regard to his exercise claim – conduct which does not give rise to an independent constitutional violation. Defendants also move to dismiss all claims asserted against the individual Defendants in their official capacities as being redundant of claims against the County itself. Finally, Defendants move to dismiss Plaintiff's First Cause of Action with regard to provision/conditions of exercise or, alternatively, that qualified immunity be granted as to the individual Defendants in this regard. (ECF No. 22, Mot. at 2-3.) Defendant Galles, separately, moves to dismiss the claim against him pertaining to the deprivation of telephone privileges for lack of exhaustion of the administrative remedies and as barred by the statute of limitations. For the reasons explained below, the Court finds that Defendants' motions to dismiss should be denied.

///

///

**D.      Failure State Cognizable Claim Under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986**

Defendants move for dismissal of any conspiracy claims set forth against them in the complaint.

Defendants are correct that Plaintiff does not state a cognizable conspiracy claim under either 42 U.S.C. § 1985(3) or § 1986.  Indeed, no such claim was found cognizable in the Court's April 29, 2014, order, and all claims found non-cognizable were dismissed from the action. (ECF No. 11.) Accordingly, there is no basis for Defendants to move for dismissal of this claim, as it is non-existent in this action.

**E.      Failure to Exhaust Administrative Remedies**

Defendants move for dismissal of Plaintiff's claim relating to the deprivation of telephone use for failure to exhaust the administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.

Defendants specifically argue that Plaintiff pleads PLRA compliance with regard to other incidents that allegedly occurred while he was held at the Stanislaus County Jail (Compl. at ¶¶ 34, 38, 40, 43-48), Plaintiff fails to plead compliance with the PLRA as to his claim based on the deprivation of telephone communication. (ECF No. 22, Mot. at 5.)

By the PLRA, Congress amended 42 U.S.C. §1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove.  Jones, 747 F.3d at 1166.  Thus, inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  Albino holds that, in general, the defense should be brought as a Rule 56 motion for summary judgment, unless in the rare event that the prisoner's failure to exhaust is clear on the face of the complaint.  Albino, 747 F.3d

1168-1169, 1171.

Because Plaintiff is not required to plead exhaustion of the administrative remedies in his complaint and it is not clear from the face of the complaint that Plaintiff has not exhausted the administrative remedies as to his claim relating to the deprivation of telephone use, Defendants' motion to dismiss this claim for failure to exhaust should be denied. Should Defendants wish to argue the lack of exhaustion of the administrative remedies, they should do so by way of motion for summary judgment, accompanied with relevant evidence to meet their burden of proof. Albino, 747 F.3d at 1169.

### F.    Dismissal of Claims Against Defendant Duncan

Defendant Duncan argues that Plaintiff's claim relating to the deprivation of outdoor/out-of-cell exercise against Defendant Duncan is based on Duncan's denial of Plaintiff's grievances regarding the issue.

If sufficient facts, as here, are alleged to demonstrate a causal connection between the constitutional violation at issue and Defendant's actions or omissions, a Defendant is not immune as a matter of law from liability merely because their culpability is somehow intertwined with Plaintiff's pursuit of his inmate appeal regarding the same alleged constitutional violation. See e.g., Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-1075 (9th Cir. 2013) (liability under section 1983 may be based on the acquiescence in the constitutional deprivations of which a complaint is made); Starr v. Baca, 652 F.3d 1202, 1205-1206 (9th Cir. 2011) (same); see also Peralta v. Dillard, 744 F.3d 1076, 1085-1087 (9th Cir. 2014) (although the mere administrative review without any awareness of risk to inmate's health does not provide a basis for section 1983 liability, an administrator who knowingly fails to respond to an inmate's requests for help may be liable); Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison administrators are liable if they knowingly fail to respond to a request for help).

Defendant is correct insofar as inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). However, in his complaint, Plaintiff alleges that he filed administrative appeals with Defendant Duncan in which he maintained that he was being deprived of

adequate outdoor/out-of-cell recreation. Plaintiff's complaint is based on the denial of outdoor exercise absent restraints, not the denial and/or participation in the grievance process. The grievance procedure is the method by which the Defendant was notified of the alleged constitutional violation relating to the restriction on outdoor/out-of-cell exercise, and he failed to remedy the problem. Based on the allegations in the complaint coupled with the notice provided to the administrative appeals, the Court finds, as stated in the prior screening order, that Plaintiff has stated a cognizable claim against Defendant Duncan for subjecting him to conditions of confinement in violation of the Eighth Amendment.

### G.     Denial of Right to Exercise Claim Against Individual Defendants and/or County

Defendants submit that Plaintiff asserts claims against all individual Defendants in their official and individual capacities and argue that when both a municipal officer and a local government entity are named, an officer named in an official capacity may be dismissed as being redundant, citing Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). "When both a municipal officer and a local government entity are named, and the officer is named *only* in an official capacity, the court may dismiss the officer as a redundant defendant." Id. (emphasis added).

However, contrary to the language in Center for Bio-Ethnical Reform, Inc., the Defendants in this action are all sued in their individual as well as official capacities. Thus, there is no redundancy on the face of the complaint, and Defendants advance no further argument to support such a finding. According, Defendants' motion to dismiss the official capacity claims should be denied.

### H.     Violation of Constitutional Right to Exercise

Defendant content that "[w]hile Plaintiff vaguely alleges that he was not permitted to exercise during his detention in the Stanislaus County Jail, he nevertheless admits that he was "required to exercise" during that same detention for at least three hours per week." (Motion, at 7) (citations omitted). Plaintiff's real contention is that he was required to exercise in "'full restraints'" that restricted his movement. Id. Defendants further argue that shacking during exercise is constitutionally permissible in light of the security needs inherent in a jail or prison setting, and this claim should be dismissed.

11

As stated in the Court's prior January 8, 2014, screening order, "pre-adjudication detainees retain greater liberty protections than convicted ones." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment. Bell v. Wolfish, 441 U.S. 520, 535-536 (1979); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017-1018 (9th Cir. 2010). While pretrial detainees' right are protected under the Due Process Clause of the Fourteenth Amendment, the standard for claims brought under the Eighth Amendment has long been used to analyze pretrial detainees' conditions of confinement claims. Simmons v. Navajo County, Ariz., 609 F.3d at 1017-1018; Clouthier v. County of Contra Costa, 591 F.3d 1232, 1244 (9th Cir. 2010). To state a claim, Plaintiff must allege facts demonstrating that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Inmates have a constitutional right to outdoor exercise under the Eighth Amendment. Thomas v. Ponder, 611 F.3d 1144, 1151-1152 (9th Cir. 2010). "'[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.'" Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). Thus, [the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." Allen, 48 F.3d at 1087. While the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), in this Circuit, the deprivation of regular outdoor exercise for a prolonged period, is unquestionably sufficient to meet the objective requirement of the Eighth Amendment analysis. Lopez v. Smith, 203 F.3d 1122, 1132-1133 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-1088 (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).

"Determining what constitutes adequate exercise requires consideration of the physical characteristics of the cell and jail and the average length of stay of the inmates." Pierce v. County of Orange, 526 F.3d 1190, 1211-1212 (9th Cir. 2008) (citation and internal quotation marks omitted). Complete denial of outdoor exercise "for extended periods" can be a sufficiently serious deprivation

for constitutional purposes. LaMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Further, the use of shackling which is "excessive, painful and degrading" violates the Eighth Amendment. See Spain, 600 F.2d at 197 (affirming trial court finding that Eighth Amendment violated where restraints imposed on prisoner during out-of-cell movements were excessive, painful, and degrading).

In this instance, Plaintiff's complaint involves the allegations that after being moved from one location to another, he was deprived of outdoor exercise. Plaintiff was informed, due to his maximum security status, official policy required him to attempt exercise in "full restraints," including leg irons and handcuffs while enclosed within a "black box" to restrict any wrist movement for a total of three hours per week. (ECF No. 1, Compl. at ¶¶ 30, 31.) Plaintiff further alleges that he sustained several injures while exercising, including injury to his shoulders, elbows, writs, and Achilles tendons. (Id. at ¶ 32.)

Contrary to Defendants' argument, even if Plaintiff was able to maintain some form of limited exercise with restraints for approximately three hours per week, Plaintiff has a constitutional right to out-of-cell and outdoor exercise. Thomas v. Ponder, 611 F.3d at 1151. The Ninth Circuit has long recognized that outdoor exercise is extremely important to the psychological and physical well-being of inmates, Spain v. Procunier, 600 F.2d at 199, and the Court rejects Defendants' argument that because Plaintiff was able to and may have had limited exercise, his claim fails as a matter of law. On a motion to dismiss the Court must accept Plaintiff's allegations as true. Plaintiff's allegations, taken as true at the pleading stage, support a finding that he may have been subjected to conditions of confinement in violation of his constitutional rights, and Defendants' motion to dismiss this claim should be denied.

**I.      Qualified Immunity**

Defendants argue that assuming this Court finds a cognizable claim for violation of Plaintiff's constitutional right to exercise without restraints, Defendants are entitled to qualified immunity with respect to this claim.

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986). "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)) (internal quotation marks omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made. . . ." Estate of Ford, 301 F.3d at 1049 (citing Saucier at 205) (internal quotation marks omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier, 533 U.S. at 201; Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999). A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not appropriate unless it can be determined "based on the complaint itself, that qualified immunity applies." Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001); Rupe v. Cate, 688 F.Supp.2d 1035, 1050 (E.D. Cal. 2010) (denial of qualified immunity because could not be clearly determined on the face of complaint but stated the ground could be raised by way of motion for summary judgment).

At this stage of the proceeding, this Court may consider only whether the facts as alleged in the first amended complaint plausibly state a claim and whether that claim asserts a violation of a clearly established right. In this case, an inmate's constitutional right to outdoor exercise was clearly established well before the alleged violations took place in 2006 through 2009. See Bell v. Wolfish,

441 U.S. 520, 538 (1979) (Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective); Keenan v. Hall, 83 F.3d 1083, 1089-1090 (9th Cir. 1996); Allen v. Sakai, 48 F.3d 1082, 1087-1088 (9th Cir. 1994). Liberally construed, Plaintiff alleges that after being moved from one location to another, he was deprived of outdoor exercise for a fifteen month period of time. (ECF No. 1, Compl. at ¶ 30.) Plaintiff was informed, due to his maximum security status, official policy required him to attempt exercise in "full restraints," including leg irons and handcuffs while enclosed within a "black box" to restrict any wrist movement for a total of three hours per week. (Id. at ¶ 31.) Plaintiff further alleges that he sustained several injures while exercising, including injuries to his shoulders, elbows, wrists, and Achilles tendons. (Id. at ¶ 32.) Plaintiff was finally allowed outdoor exercise without restraint on October 2, 2009, well over three years after Plaintiff's arrest and detention on February 17, 2006. (Id. at ¶ 55.) By Plaintiff's account, he was deprived adequate outdoor exercise for a period of 189 weeks. (Id. at ¶ 58.)

Assuming the truth of these allegations, it cannot be said that Defendants' actions did not clearly violate Plaintiff's constitutional right. Defendants argue for qualified immunity based on their version of the facts and assessment of the legitimate penological interest. However, even if the defense may prevail on a motion for summary judgment, the assessment of the constitutionality of denial of outdoor exercise without restraint for a lengthy period of time is too fact-dependent to resolve on a motion to dismiss. See, e.g., Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010) ("the qualified immunity inquiry is highly context-sensitive, turning on whether it would be clear to a reasonable officer that denying outdoor exercise was unlawful "in the situation he confronted") (quoting Saucier, 533 U.S. at 202). Thus, it cannot be determined based on the face of the complaint itself that qualified immunity applies. The determination of whether Plaintiff's constitutional rights were violated hinges on further development of the facts. Accordingly, Defendants' motion to dismiss based on qualified immunity should be denied.

Defendants cite the case of Murray v. Raney, No. 1:11-cv-00428-MHW, 2012 WL 5985543 (D. Idaho 2012), in support of their argument. However, even if Murray were binding authority, which it is not, it is distinguishable. In Murray, the Court found that despite clearly established law

that a long term deprivation of outdoor exercise is unconstitutional, it was not sufficiently clear "that a reasonable official under th[o]se particular circumstances—involving a high security inmate, who may have had other exercise options, and was detained for only 29 days—would understand that his or her conduct violated that right." Here, it is without doubt, that Plaintiff was incarcerated at the Stanislaus County Jail for a much lengthier period of time than in Murray-a factual distinction that is material to Plaintiff's claim for relief. Accordingly, the Court finds that Defendants' motion to dismiss based on qualified immunity should be denied.

### J.    Statute of Limitations Bar as to Claim Against Defendant Galles

Defendant Galles moves to dismiss the claim relating to deprivation of telephone privileges against him as barred by the statute of limitations.

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003. Cal. Civ. Proc. Code § 335.1; Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-955.

In actions where the federal court borrows the state statute of limitations, courts should also borrow all applicable provisions for tolling the limitations period found in state law. Jones, 393 F.3d at 927. Under California law, prisoners who at the time of the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction benefit from a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1.

In addition, California's equitable tolling doctrine "applies when an injured personal has several legal remedies and, reasonably and in good faith, pursues one." McDonald v. Antelope Valley Community College Dist., 45 Cal.4th 88, 100 (citation and internal quotation marks omitted). The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to

prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations-timely notice to the defendant of the plaintiff's claims-has been satisfied, McDonald, 45 Cal.4th at 99 (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff. Id. at 101-103.

If running of the statute of limitations is apparent on the face of a complaint, a claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6). Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010). In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint. Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995) (internal citations and quotation marks omitted); see also Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001) (stating that, "only in the rare case" could the analysis of California's equitable tolling doctrine proceed at the pleading stage). "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc., 68 F.3d at 1206 (internal citations and quotation marks omitted).

Defendant requests, and this Court takes, judicial notice of the civil rights action Plaintiff filed in this Court in 2009, in 1:09-cv-00930-AWI-JLT, Allen v. County of Stanislaus, wherein all of Plaintiff's claims were initially raised.[1] In that action, Plaintiff's amended complaint which alleged inadequate dental care, racial discrimination, denial of due process regarding classification status, and denial of outdoor exercise, was dismissed with prejudice on December 13, 2010, and judgment was entered. (1:09-cv-00930-AWI-JLT, ECF Nos. 23, 24.) Plaintiff appealed the decision to the Ninth

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, this Court may take judicial notice of filings in another case. See Biggs v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003) (materials from a proceeding in another tribunal are appropriate for judicial notice); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (noting that a court may take judicial notice of "matters of public record"); United States v. Camp, 723 F.2d 74`, 744 n.1 (9th Cir. 1984) (citing examples of judicially noticed public records).

Circuit Court of Appeals. On July 13, 2012, the Ninth Circuit reversed the dismissal of the action and remanded the case back to this Court. (Id., ECF No. 31.) The Ninth Circuit held that Plaintiff's amended complaint stated a cognizable claim for inadequate medical care against Dr. Cheung, and found the Court erred in dismissing with prejudice the claims in the complaint that were unrelated to his claim for inadequate medical care against Dr. Cheung. (Id.) The Ninth Circuit directed that "[o]n remand, the district court should instead remedy [Plaintiff's] misjoinder by severing any claims or defendants unrelated to [Plaintiff's] inadequate dental care claim." (Id.) (citation omitted).

On October 11, 2012, the Court issued an order finding service of Plaintiff's first amended complaint appropriate as to Defendant Cheung, and authorized Plaintiff "to file a second lawsuit in a new case number which sets forth his claims that are unrelated to the claim related to the denial of dental care. If he wishes to do so, he SHALL file this new lawsuit within 21 days of the date of service of this order[.]" (Id., ECF No. 34.) (emphasis in original). After filing and receiving two extensions of time, Plaintiff filed the instant-new civil rights action on January 3, 2013.

Defendant does not address the issue of equitable tolling, and considering Plaintiff's prior action and the availability of equitable tolling, the Court cannot and does not find that the running of the statute of limitations on Plaintiff's federal claim against Defendant Galles to be apparent on the face of the complaint. Accordingly, Defendant Galles's motion to dismiss the claim against him as barred by the statute of limitations should be denied.

### III.

### RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motions to dismiss Plaintiff's complaint be DENIED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

///

///

Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **November 18, 2014**

UNITED STATES MAGISTRATE JUDGE