1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| COLUMBUS ALLEN, JR. | ) Case No.: 1:13-cv-00012-DAD-SAB (PC) |
| Plaintiff, | ) |
| | ) **FINDINGS AND RECOMMENDATIONS** |
| v. | ) **REGARDING DEFENDANTS' MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| STANISLAUS COUNTY, et al., | ) |
| | ) [ECF No. 71] |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff Columbus Allen, Jr. is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed April 22, 2016.

**I.**

**RELEVANT HISTORY**

This action is proceeding on Plaintiff's initial complaint, filed January 3, 2013, against Defendants County of Stanislaus, Puthuff, Christianson, Captain Duncan, and Lieutenant Lloyd for denial of outdoor exercise, against Defendants Lieutenant Suarez, Sergeant Galles, Sergeant Truffa, Mauldin, Meyers, and Williams for a due process violation for denial of access to telephone privileges, against Defendants Lieutenant Suarez, Lieutenant Clifton, Sergeant Truffa, Sergeant Radza, Williams, Aziz, Maze, and Cardoza for failure to protect, and against Defendants Lieutenant Clifton, Sergeant Radza, and Cardoza for retaliation.  (ECF No. 7.)

1

1   As previously stated, Defendants filed a motion for summary judgment on April 22, 2016.

2   (ECF No. 71.)  Plaintiff filed an opposition on May 20, 2016, and Defendants filed a reply on May 27,

3   2016.  (ECF Nos. 72, 73.)

**II.**

**DISCUSSION**

**A.      Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v.

U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed

or undisputed, must be supported by (1) citing to particular parts of materials in the record, including

but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials

cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot

produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

The Court may consider other materials in the record not cited to by the parties, but it is not required

to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031

(9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility

determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and

citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party

and determine whether a genuine issue of material fact precludes entry of judgment, Comite de

Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation

marks and citation omitted).

**B.      Allegations of Complaint**

On February 17, 2006, Plaintiff was arrested and booked into Stanislaus County Jail at

approximately 5:45 p.m.  Upon his arrival, he was escorted directly to a "safety cell/rubber room",

stripped naked, and provided a security jacked, contrary to the guidelines and standards required by

state law.  Plaintiff was retained in the cell for approximately seventeen hours and denied every

2

request to utilize the telephone services contrary to state law.  This occurred over a period of one day which allowed investigators more time and opportunity to conduct their investigation and acquire materials in hopes of obtaining an incriminating statement from Plaintiff.

On February 18, 2006 at approximately 11:15 a.m., Sergeant Truffa and deputy Williams escorted Plaintiff for fingerprints after being "cleared" from the safety cell.  During this time, one of the officers announced "deadman walking," and the other stated "time to see how things work around here boy."

Plaintiff was informed through personal accounts that another African-American, Kevin Tubbs, charged with a single murder, and did not meet the criteria for safety cell subjection, was kept there upon his arrival at SCMJ, and held incommunicado for a significant amount of time.  However, Caucasians, Jesse Frost and Cameron Terhune, were both charged with multiple murders and meet the criteria for safety cell subjection per state law, but were never subjected to the safety cell nor held incommunicado.  Plaintiff further alleges on April 19, 2009, the Modesto Bee reported that former deputy Craig Prescott, an African-American, died from injuries he sustained after his former co-workers reclassified him, after four days in custody, and attempted to remove him to the safety cell from general population.

Plaintiff was subsequently classified to maximum security, based solely on his pending charges, and was escorted by Sergeant Truffa and Williams from booking to a single cell, upon the approval of Lieutenant Suarez.

The maximum security tier was mainly composed of "Nazi low-riders" and "Skin-heads" which are White Supremacist prison gangs who consider African-Americans to be a threat and enemy regardless of gang affiliation or lack thereof.  Plaintiff was the only African-American on the maximum security tier.

Stanislaus County Sheriff Department policy required that all maximum security inmates be secured before exiting cells at all times and during escort.  The policy of moving maximum security inmates during shower time requires one deputy secure the inmate and escort him to the shower while a second deputy operates the control panel to open the cell and shower doors.

3

On February 26, 2006, after escorting Plaintiff to the shower in restraints, Deputies Aziz and Williams ignored maximum security movement policy during shower time and released an inmate, "R.D.", from his cell without restraints.  He was holding only a bottle and other "shower materials," and physically and verbally assaulted Plaintiff with urine and feces squeezed from the bottle, while making degrading epithets towards African-Americans, stating "get off our tier fucking nigger." Plaintiff was locked in the shower and unable to protect himself during the incident.

Neither Aziz or Williams charged "R.D." with a crime or notified the district attorney as required by law.  Deputy Williams assured the perpetrator that he had nothing to worry about because he would be on a bus to prison before a disciplinary hearing could take place.

Plaintiff was promptly moved from maximum security tier to another tier in a two man cell with inmate Tommy Nichols, who informed Plaintiff that he had been housed on the maximum security tier and was assaulted in a similar fashion, and deputy M. Sanders informed Nichols that Plaintiff would be housed with him before the attack occurred.

Following Plaintiff's request, he was moved to another one man cell on the first floor within a month and remained there for approximately fifteen months.  During this time, Plaintiff made several requests to participate in outdoor exercise which had been denied to him since him arrival at SCMJ.

Plaintiff was informed per policy that due to his maximum security status, he was required to attempt exercise twice per week in "full restraints," which includes leg irons, hand cuffs, and being enclosed within a "black box" to restrict any wrist movement.  The box is then padlocked to a steel chain wrapped around the waist, for a total of three hours per week.

Plaintiff sustained several injuries while exercising as required by prison policy, including injuries to his shoulders and elbows from falling while shuffling (attempting to jog), injury to his wrists from bouncing ball, and injuries to his Achilles tendons from simply walking.

Per state law, the county, by and through former Sheriff Puthuff and current Sheriff Christianson, was required to have a classification plan which allows for appeals and evaluations of classification every thirty days.  On March 30, 2009, Lieutenant Lloyd testified under oath and penalty of perjury, in part, that zero inmates are allowed classification evaluations no less than thirty days from the last request, and classification criteria for maximum security and administrative segregation

4

are virtually identical in regard to the movement policy, but administrative segregation is not required to remain in restraints on the yard.

Plaintiff was denied all requests for classification evaluations by all prison staff including, Sergeant Radza on August 3, 2007 and August 6, 2007, Lieutenant Clifton on August 7, 2007, and Captain Duncan on August 13, 2007.

On August 13, 2007, Deputy Cardoza and another unknown officer, moved Plaintiff back to maximum security, and placed him in a cell directly between a Nazi-lowrider and a Skin-head.  He was immediately "gassed" by Jeremy Spray before Deputy Cardoza could leave the tier, as the hostile Whites yelled to Cardoza "get that nigger off our tier or he's gonna get it again!" to which Cardoza replied "go ahead, we'll just move ya, he ain't leavin."

The perpetrator was moved off the tier.  Deputy Cardoza sought to minimize the risk of further attack by moving Plaintiff to the cell directly in front of the control box.  During the move, Plaintiff pleaded with Deputy Cardoza to remove him from the tier and refused to enter the cell.  Deputy Cardoza responded with a threat to use the taser gun for non-compliance.

On August 18, 2007, October 2, 2007, and October 4, 2007, with unknown deputies operating the control box, Plaintiff was assaulted in his cell directly in front of the control box at shower time.

Plaintiff submitted grievances to secure his person and request for classification evaluation, following each attack.  On August 20, 2007, Plaintiff's grievance was denied by Deputy Escarcez stating "you cannot grieve your housing."  Sergeant Radza denied the grievances on August 22, 2007 and October 8, 2007, stating "your classification is appropriate and will not be lowered at this time." "It is impractical to cuff inmates going back and forth from the shower."  "If you're gassed … you may press charges."  On October 31, 2007, Lieutenant Clifton denied the grievance affirming the previous responses by his subordinates.

Plaintiff was personally informed and alleges that a maximum security inmate, David Hess, attacked an inmate before staff and the victim, a White guy, refused to press charges.  The officer who witnessed the crime pressed charges and informed the district attorney contrary to the claims of Sergeant Radza.

5

Plaintiff complained of emotional distress and mental anguish due to the combination of the lack of outdoor exercise and the continuous attacks in the hostile environment.

On April 10, 2010, and April 15, 2010, Plaintiff was accused of gassing White inmates.  Both victim inmates were promptly moved from the tier while Plaintiff was charged with several rule violations including, assault, battery, hate crimes, violation of housing unit rules, and violation of inmate rules.

Plaintiff sought classification evaluations and outdoor exercise for a second time approximately one year later.  His requests were again denied.  Sergeant Radza denied the request on October 17, 2008, stating "your classification will remain the same," and on October 21, 2008, stating "this [issue] has already been answered."  Lieutenant Clifton denied the request on October 30, 2008, stating "this was answered by myself and filed August 7, 2007 and [approved] and filed by Cpt. Duncan on [August 13, 2007].  The requests and answer is the same."  Lieutenant Lloyd denied Plaintiff's requests on October 30, 2009, deferring to the responses of his subordinates.

Plaintiff appealed to Captain Duncan, who replied on December 4, 2008, stating "this issue has been adequately addressed.  The facility is in compliance with policy which is supported by County Counsel."  Captain Duncan directed Plaintiff to request copies of the departments classification procedures from Sergeant Wright who stated on June 22, 2009, "your classification is reviewed every 60 days," and claimed "'files and records' are confidential in accordance with Gov. [Code] 6254(f)."  Plaintiff appealed to Lieutenant Lloyd who stated on June 26, 2009, "there is no other portion that will be released to you."  Plaintiff then appealed back to Captain Duncan who simply referred to Lieutenant Lloyd's last response and confirmed on July 13, 2009.

Plaintiff filed claims with the County Board of Supervisors requesting redress on November 25, 2008, and March 2, 2009, which were denied.

In December 2008, the local newspaper published an article reporting the allegations in Plaintiff's claim filed November 25, 2008, and the Stanislaus County Civil Grand Jury conducted an investigation in the months of January through March 2009.

The grand jury reported in part: "1) '"high-risk' inmates were not allowed to exercise without restraints," and 2) "there were no clear 'written' guidelines and standards for the classification of

6

inmates" [at SCMJ], stating "the existing procedures appears to be an ad-hoc process failing to employ qualified staff specifically trained to make these decisions."  The grand jury recommended development of classification guidelines and training, and that high-risk inmates be allowed exercise without restraints.

Sheriff Christianson responded to the grand jury report on July 24, 2009, stating that more than 30 pages of formal policy, procedure, and training specifically related to the classification of inmates in the "Stanislaus County Detention Facilities" have existed for years; and cited "the classification unit [sergeant] provides updates and schedules bi-monthly meetings with the entire unit in attendance. Classification deputies are required to provide a unit report after every shift and the [sergeant] reviews the unit reports on a daily basis … the classification deputies work as a team to ensure the safety and security of our facilities.  The inmates are housed in the most appropriate locations available." Christianson admitted "max-sec inmates, as a matter of longstanding policy, are to be in full restraints while on the yard.  The [grand jury's] recommendations require further analysis.  Staff is reviewing this policy with County Counsel."

On September 15, 2009, the County incorporated the same response of Sheriff Christianson, verbatim in its "Action Agenda Summary" addressing the grand jury's findings and recommendations.

On October 2, 2009, Plaintiff was finally allowed exercise on the yard without restraints per the grand jury recommendation.

C.      **Defendants' Objections to Plaintiff's Evidence**

Defendants raised numerous objections to the evidence presented by Plaintiff.

It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted; and therefore, the Court declines to address each objection.  See Capital Records, LLC v. BlueBeat, Inc., 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010).  With respect to objections in general, the Court notes that "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial."  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-419 (9th Cir. 2001) (internal quotations omitted).  The focus is on the admissibility of the evidence's contents, not its form.  Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840,

7

846 (9th Cir. 2001); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Cheeks v. General Dynamics, 22 F.Supp.3d 1015, 1027 (D. Ariz. 2014).  The Court also notes that "the requirement of personal knowledge imposes only a minimal burden on a witness; if reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." Strong v. Valdez Fine Foods, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotations and citation omitted).  Although allegations based purely on belief do not suffice, the personal knowledge threshold is particularly low at summary judgment because all justifiable inferences must be drawn in favor of the nonmoving party.  Id. Thus, "[u]nfounded speculation as to an affiant's alleged lack of personal knowledge of the events in his affidavit does not render it inadmissible."  Greene, 648 F.3d at 1019.  The Court declines to strike the evidence based on Defendants' relevancy objection.  Irrelevant information cannot create a triable issue of material fact, and the Court finds it unnecessary to undertake striking portions of declarations merely because they arguably lack relevant.  See, e.g., Burch, 433 F.Supp.2d at 1119.  To the extent the Court relies on any evidence to which either party objects, the objection is addressed below if necessary to the merits of the claim.

### D.    Plaintiff's Objection to Timeliness of Defendants' Exhaustion Motion

Plaintiff argues that Defendants "waived" the ability to present a motion for summary judgment based on exhaustion of the administrative remedies under the Prison Litigation Reform Act (PLRA) on the grounds that prior extensions of the dispositive motion deadlines did not expressly mention the PLRA.  (Opp'n at ¶¶ 18-20.)

Pursuant to the Court's discovery and scheduling order dated February 13, 2015, the Court set the deadline for filing of dispositive motions for failure to exhaust the administrative remedies as May 13, 2015, and the filing of dispositive motions as December 24, 2015.  (ECF No. 45.)  Defendants sought three extensions of the dispositive motion deadline (ECF Nos. 54, 58, 60), and Defendants' requests were granted (ECF Nos. 55, 59, 61).  In the third request filed on September 16, 2015, Defendants requested and received an extension of time to complete outstanding discovery and to file "dispositive motions."  (ECF Nos. 60, 61.)  The dispositive motion deadline was extended to April 22, 2016.  (ECF No. 61.)  As Defendants point out, it was the original exhaustion deadline that was extended by all three requests.  Thus, the Court's grant of the extension of the dispositive motion

deadline necessarily included an extension of the dispositive motion deadline to file a motion predicated on the failure to exhaust under the PLRA.  Accordingly, Plaintiff's argument that the Defendants "waived" the ability to present an exhaustion related motion for summary judgment is rejected.

### E.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at

1166; <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).   Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.   Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, <u>Albino</u>, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," <u>id.</u> at 1172.   If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."   <u>Id.</u>   "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."   <u>Id.</u> at 1166.   However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."   <u>Id.</u>

### 1.   SCMJ Grievance Policies

Defendants submit evidence that SCMJ grievance policies authorized inmates to submit a grievance regarding the conditions of their confinement.   <u>See</u> 2004 Stanislaus County Sheriff's Department, Adult Detention Division, Policy and Procedure, Inmate Grievances at p. 109; see also 2008 Stanislaus County Sheriff's Department, Adult Detention Division, Policy and Procedures, Chapter 3: Inmate Rules, Discipline & Rights, at p.79; <u>see</u> Decl. of Ronald Lloyd at ¶ 7, Appendix of Exhibits, Exhibit T.   To utilize the process, jail officials provided inmates with an inmate request form ("Form"), which was used to submit requests, grievances, and appeals.   <u>See</u> Ex. 1 to Defendants' Request for Admissions, Set Two.

The SCMJ grievance policy consists of four levels of review (one informal and three formal), ultimately requesting an appeal to the division commander.  See Decl. of Ronald Lloyd at ¶¶ 7, 10, Ex. T.  More specifically, inmates proceed through the four grievance levels to exhaust the process: (1) inmates complete the Form indicating that they are creating a grievance and submit the grievance to jail staff; (2) staff then respond in writing and forward the grievance to the shift supervisor if a resolution of the grievable issue could not be reached at that level of review; (3) after receiving the Supervisor's written response of the issue, inmates submit a written appeal of the supervisor's response to the facility commander for administrative review, and if appropriate: (4) inmates request additional review of the facility commander's response by the adult detention division commander. Id.

The policies stated that "[i]nmates should exhaust all administrative grievance/appeal procedures before applying to the courts.  Decl. of Ronald Lloyd, ¶ 7, Ex. T.  The inmate grievance procedure, inmate grievance rights, inmate responsibilities, and the inmate grievance process were posted in each housing area within the SCMJ.  Id.

2.      Analysis of Exhaustion-Related Motion for Summary Judgment

a.      **Request for Admissions, Set Two**

Rule 36 of the Federal Rules of Civil Procedure provides, in relevant part, that "a party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to … facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A).  "A matter is admitted unless … the party against whom the request is directed [timely] serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

"The effect of the admission is such that 'any matter admitted under this rule is conclusively established' unless the court grants a motion to waive or amend." Tillamook Country Smoker, Inc. v. Tillamook County Creamery Assoc., 465 F.3d 1102, 1111-12 (9th Cir. 2006); Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981).  "[T]he court and the parties are bound by such admissions, which cannot be ignored by the district court simply because it finds the evidence

11

presented by the party against whom the admission operates more credible." <u>Tillamook County</u> <u>Smoker, Inc.</u>, 465 F.3d at 1112 (citation and internal quotation marks omitted).

Defendants have submitted as exhibit F to their motion for summary judgment a second set of request for admissions which were allegedly served on Plaintiff on December 28, 2015. (Mot., Ex. F, ECF No. 71-6.) In his opposition, Plaintiff contends that he never received a copy of the second set of requests for admissions and there is no mail log to show receipt of such request.

Plaintiff's argument is persuasive. Defendants, through counsel, declare that Plaintiff was served by mail with the second set of requests for admissions on December 28, 2015. However, there is no evidence to support the fact that the request for admissions, set two was actually received by Plaintiff which would prompt a response. Absent such evidence, the Court will not find that Plaintiff's failure to respond to the requests deemed admitted for purposes of ruling on the instant motion for summary judgment. Furthermore, because Plaintiff is proceeding pro se Defendants failed to provide notice of the consequences of his failure to timely respond as outlined in <u>Nieto v. Hodge</u>, Case No. 1:10-cv-01397-AWI-JLT (PC), 2012 WL 4833398, *2 n.1 (E.D. Cal. Oct. 10, 2012) (citing <u>Diggs v.</u> <u>Keller</u>, 181 F.R.D. 468 (D. Nev. 1998). Accordingly, the Court will exercise its discretion to give no effect to the supposedly deemed admissions in the request for admissions, set two in ruling on the instant motion for summary judgment.

### b.    Plaintiff's Denial of Outdoor Exercise Claim

Defendants submit evidence that during Plaintiff's detention at SCMJ, Plaintiff submitted ten authenticated grievances regarding his denial of outdoor exercise claim. (Mot. Exs. G-R, ECF No. 71-6.) Plaintiff submitted those grievances to various jail staff, including Sergeant Radza, Lieutenants Suarez and Lloyd, and Captain Duncan. Defendants argue, however, that Plaintiff never appealed jail staff's responses to his grievances by indicating appeal on the form. (<u>Id.</u>)

In opposition, Plaintiff contends that he was unaware of the necessity to "appeal" the grievance. Plaintiff's argument has merit.

In moving for summary judgment, Defendants bear the ultimate burden of proof as to whether Plaintiff exhausted the administrative remedies. <u>Albino</u>, 747 F.3d at 1166. Under the circumstances here, the Court finds that Defendants have failed to carry their burden of persuasion given that

Plaintiff alleges he did not have notice of the appeal process and there is no evidence that Plaintiff actually knew the difference between grievance and appeal.  Indeed, the grievance/appeal form itself makes no distinction between the appeal and grievance.  Furthermore, in the grievance dated August 9, 2007, Plaintiff sought review by the Division Commander (which presumably would have been the final level of review).  (Mot. Ex. J.)  In addition, Plaintiff's complaint specifically states that on August 13, 2007, he was informed by Captain Duncan that he (Duncan) was the final stage of the appeal process.  (Compl. at ¶ 34.)  Accordingly, the Court recommends that Defendants' motion for summary judgment be denied.

### c.     Plaintiff's Denial of Telephone Privileges

Defendants correctly submit that Plaintiff admitted he "did not submit a grievance to any employee of the Stanislaus County Sheriff's Department pertaining to [his] claim that [he]was denied access to the telephone upon [his] arrival and commencement of [his] detention at the Stanislaus County Jail on February 17, 2016.  See Pl.'s Resp. to Defs.' Req. for Admis. No. 1, Decl. of Ryan P. O'Conner at ¶ 3, Ex. E; ECF No. 71-6.)   However, as stated above, Defendants have failed to carry their burden of proof in demonstrating that Plaintiff had actual knowledge of the appeal process.  This is particularly so given that this claim arose while Plaintiff was housed in the safety cell after he was booked into SCMJ.  Accordingly, Defendants' motion for summary judgment for failure to exhaust this claim should be denied.

### d.     Retaliation Claim

In moving for summary judgment based on Plaintiff's failure to exhaust his retaliation claim, Defendants argue only that Plaintiff admitted such fact by failing to respond to the request for admissions, set two.  However, as explained above in sub-section (a), the Court cannot find such fact deemed admitted by Plaintiff, and Defendants' motion for summary judgment for failure to exhaust this claim should be denied.

### e.     Plaintiff's Failure to Protect Claim

In addition to the default admission argument (rejected above), Defendants argue that Plaintiff's only grievance that references inmate assaults does so generally.  The Court does not find Defendants' argument persuasive.

On August 19, 2017, Plaintiff submitted the following grievance:

I've been debased & assaulted w/urine & feces 2x's within 7 days.  There's an attempt to put a "rat" jacket on me.  The other Blacks on the tier have no problems w/the Surenos, who shoot Blacks on the street like it's a sport, or the "woods" & I don't want my presence to disturb the peace that was apparent B-4 I came.  This is my 3rd run on this tier & this problem persist.  This is a very hostile environment & is not mentally healthy for me.  I can't even use the phone w/o causing problems for my neighbor.  Dep. Cardoza told me "I no longer 'qualify'" to be in D-14 when he moved me.  I don't know why that is or who I upset to cause the sudden change but I would like to move back A.S.A.P. or a reason why I can't.  Thank you.

(Mot. Ex. K.)

The Court finds this grievance sufficient to grieve the facts of his failure to protect claim as alleged in the complaint.  Although Plaintiff did not name each individual Defendant in the grievance, he did allege sufficient facts to put the jail on notice of his failure to protect claim.  "[I]f prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.  As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming.'" Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002).  The Ninth Circuit held that Strong set the appropriate standards for prisoner grievances so as to sufficiently notify prison personnel of a problem for exhaustion purposes.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

The Court finds this grievance was sufficient to apprise jail officials of the nature of his failure to protect claim.  Accordingly, the Court finds that Defendants have not met their burden of proof in demonstrating that this claim is unexhausted, and therefore the motion for summary judgment should be denied.

3.      Analysis of Motion for Summary Judgment on the Merits

Defendants argue that Plaintiff's admissions conclusively establish that his claims are meritless; the PLRA bars Plaintiff's claims for compensatory damages because Plaintiff was not physically injured; the Stanislaus County Men's Jail yard policy does not give rise for the imposition of Monell-type liability; the Stanislaus County Men's Jail yard policy does not give rise to the

14

imposition of supervisory liability; and all Defendants sued in their individual capacities are entitled to qualified immunity.

     **a.**     **Statement of Undisputed Facts[1]**

     1.    Plaintiff Columbus Allen, Jr., II was detained as a maximum security inmate at the Stanislaus County Men's Jail (SCMJ) awaiting trial on murder charges from February 17, 2006 to August 2, 2010.  (Hon. Scott Stephan's Minute Order, dated August 2, 2010, Ex. GG.)

     2.    Following arrest, Plaintiff was initially placed into a safety cell as a potential suicide risk.  (Pl. Dep. at 82:6-17; Decl. of Christopher Williams at ¶ 6; Decl. of Ronald Lloyd at ¶ 14(a), Ex. U.)

     3.    After Plaintiff was removed from a safety cell on February 18, 2006, jail staff gave him an initial classification assessment.  (Decl. of Christopher Williams at ¶¶ 7-9.)

     4.    The SCMJ intake deputy and classification deputy conferred and decided to classify Plaintiff as a maximum security inmate.  (Id. at ¶ 9.)

     5.    Plaintiff was initially housed on x-tier on February 18, 2006 to commence his detention.  (Compl. at p. 4, ¶ 23.)

     6.    SCMJ grievance policy consists of four levels of review (one informal and three formal), ultimately requiring an appeal to the division commander.  (Decl. of Ronald Lloyd at ¶¶ 7, 10, Ex. T.)

     7.    Following an inmate assault, Plaintiff was rehoused off of x-tier.  (Compl. at p. 5-6, ¶ 29.

     8.    Plaintiff subsequently submitted a grievance stating that since he was facing the death penalty for the murder of a peace officer, he had nothing to lose by attacking Defendant Sergeant Truffa.  In the grievance he warned, "I will need more than a psych or the Lord's help to refrain from

---

[1] Plaintiff disputes almost every statement of undisputed facts presented by Defendants; however, Plaintiff fails to present admissible evidence to dispute the majority of the facts, therefore, the Court has omitted only those facts that are actually placed in dispute by Plaintiff.

15

taking matters into my own hands if [Sergeant Truffa] comes within his reach again.  (Decl. of Ryan P. O'Connor at ¶ 2, Ex. C, ECF No. 71-6.)

9.      Plaintiff submitted a grievance on December 16, 2006 in which he stated he would take "drastic measures" against deputies.  (Decl. of Ryan P. O'Connor at ¶ 2, Ex. D, ECF No. 71-6.)

10.     As a maximum security inmate, Plaintiff was required to wear full restraints at all times outside of his cell, including during his weekly six-hour exercise allotment on the outdoor yard.  (Pl. Dep. at 29:16-29:22, 32:1-3, Decl. of Ryan P. O'Connor at ¶ 2, Ex. A.)

11.     Yard policy provision at issue mandated the following: "When maximum security inmates are to be moved to the [y]ard for exercise, they will be chained inside their cells through the bars and then released from their cells.  When returning from the yard, they will be placed into their cells and then unchained.  Maximum security inmates will remain in full restraints while on the yard. (Decl. of Christopher Williams, ¶ 11, Ex. S.)

12.     On or around September 28, 2009, the yard policy was modified to allow restraint-less outdoor exercise for all inmates regardless of their classification.  (Decl. of Christopher Williams, ¶ 12.)

13.     Plaintiff, along with all maximum security inmates, was required to be restrained at all times outside of his cell save for exercise periods on the yard occurring after September 27, 2009. (Compl. at p. 5, ¶ 26.)

14.     Plaintiff exercised daily in his cell without restraints.  (Pl. Dep. at p. 27:2, 27:12-15, Decl. of Ryan P. O'Connor at ¶ 2, Ex. A.)

15.     Plaintiff attempted to exercise outdoors by jogging while wearing full restraints on at least one occasion.  (Id. at pp. 42:22-43:6.)

16.     Plaintiff admitted that he was never treated by a medical provider for injuries stemming from his use of restraints.  (Id. at p. 44:4-7.)

17.     Following an inmate assault, Plaintiff was rehoused on or around February 26, 2006. (Compl. at p. 5, ¶ 29.)

18.     Plaintiff was rehoused to maximum security x-tier on August 13, 2007, where he remained for the majority of his detention.  (Decl. of Ryan P. O'Connor at ¶ 3, Ex. F.)

19.     Plaintiff admitted that medical providers never treated Plaintiff for any physical injuries caused by inmate assault, which gave rise to Plaintiff's failure to protect and retaliation claims.  (Pl. Dep. at pp. 71:24-72:9, Decl. of Ryan P. O'Connor at ¶ 2, Ex. A.)

**b.      Outdoor Exercise Free of Restraints**

"[P]re-adjudication detainees retain greater liberty protections than convicted ones."  Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted).  As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment.  Bell v. Wolfish, 441 U.S. 520, 535-536 (1979); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017-1018 (9th Cir. 2010). The law in this area is somewhat unclear.  See, e.g., Ninth Circuit Model Jury Instruction 9.30 ("It is unclear, however, the extent to which Castro require modification of Instruction 9.27 [Particular Rights–Eighth Amendment-Convicted Prisoner's Claim re Conditions of Confinement/Medical Care] when applied in the context of a pretrial detainee's similar claim under the Fourteenth Amendment.") In Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015), the Supreme Court held that in the context of a claim for excessive force that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.  The Ninth Circuit extended the holding in Kingsley to a claim for failure to protect brought by a pretrial detainee.  Castro v. County of Los Angeles, 833 F.3d 1060, 1069-71 (9th Cir. 2016).

"Prior to Kingsley, a pre-trial detainee complaining of conditions of confinement had to allege facts that, if true, would satisfy both prongs of a bifurcated test under the Eighth Amendment."  King v. Cty of Los Angeles, No. CV 15-07072-SVW (AFM), 2016 WL 6902097, at *8 (C.D. Cal. Oct. 7, 2016).  That is, the pre-trial detainee was required to allege that (1) objectively, he was subjected to conditions that "are or were serious enough to be considered cruel and unusual," and (2) subjectively, the defendants acted with "a sufficiently culpable state of mind (i.e., 'deliberate indifference.')."  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298-99 (1991)).  After Kingsley, and the Ninth Circuit's extension of such holding in Castro, it appears a pretrial detainee need only demonstrate that defendants engaged in "objectively unreasonable" conduct, see Castro, 833 F.3d at 1071, and the Court finds no relevant distinction from a conditions of confinement claim relating to adequate outdoor exercise versus a claim of excessive force or failure to protect.   In determining whether a

17

defendant's conduct is "objectively unreasonable," courts should carefully consider the "facts and circumstances of each particular case." <u>Castro</u>, 833 F.3d at 1071.  In any event, the Court's determination here would be the same under either standard.

Inmates have a constitutional right to outdoor exercise under the Eighth Amendment.  <u>See</u> <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993).  Accordingly, "the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective." <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1211-12 (9th Cir. 2008). "Determining what constitutes adequate exercise requires consideration of the physical characteristics of the cell and jail and the average length of stay of the inmates." <u>Id.</u>  "'[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.'" <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979)).  Thus, [the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." <u>Allen</u>, 48 F.3d at 1087.  While the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997), in this Circuit, the deprivation of regular outdoor exercise for a prolonged period, is unquestionably sufficient to meet the objective requirement of the Eighth Amendment analysis.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-1133 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); <u>Allen</u>, 48 F.3d at 1086-1088 (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).   Further, the use of shackling which is "excessive, painful and degrading" violates the Eighth Amendment.  <u>See</u> <u>Spain</u>, 600 F.2d at 197 (affirming trial court finding of Eighth Amendment violation where restraints imposed on prisoners during out-of-cell movements were excessive, painful, and degrading).

Defendants Assistant Sheriff Puthuff, Sheriff Christianson, Captain Duncan, and Lieutenant Lloyd argue they are entitled to judgment as a matter of law because: (1) Plaintiff posed a significant safety and security threat; (ii) the restraints used caused no more than routine discomfort;  and (iii) Plaintiff had adequate alternative opportunities to engage in exercise, and therefore there was no violation.

18

Plaintiff acknowledges that he was allowed six hours per week in the exercise yard in "full restraints" pursuant to the SCMJ maximum security policy in effect during the majority of Plaintiff's detention.  (Pl. Dep. at pp. 29:16-22, 32:1-3, Decl. of Ryan P. O'Connor at ¶ 2, Ex. A.)

In moving for summary judgment, Defendants cite to Plaintiff's commitment offense of murder and institutional behavior as the basis for justifying maximum security placement which subjected Plaintiff to outdoor exercise in full restraints.  While Plaintiff was placed in maximum security for his commitment offense and institutional behavior, the issue determinative here is whether the policy of requiring Plaintiff to exercise in full restraints constituted a violation under the Fourteenth Amendment.  Thus, Plaintiff's commitment offense and institutional behavior are not dispositive to the ultimate issue to be determined.  Plaintiff was housed at the SCMJ from 2006 to 2010, and it undisputed that the majority of his placement was in the maximum security unit.  The yard policy required that Plaintiff be in full restraints during all outdoor exercise which included leg irons and handcuffs while enclosed within a "black box" to restrict any wrist movement.  However, the facts viewed in favor of Plaintiff, as this Court must, demonstrate a genuine issue of material fact as to whether such policy constituted a violation under the Fourteenth Amendment.  Defendants have not met their burden in showing that Plaintiff was not subjected to restrictions on exercise that amounted to punishment or that he received adequate outdoor exercise.  The Court cannot accept Defendants' sole reference to the potential violence as necessarily justifying, as a matter of law at the summary judgment stage, the deprivation of effective out of cell exercise in this instance.  A rational trier of fact after hearing the evidence may determine that Defendants' actions constituted a constitutional violation under the Fourteenth Amendment.  Because the SCMJ policy required that all inmate housed in maximum security housing to wear full restraints while exercising outside of the cells, Plaintiff's commitment offense and institutional behavior are not dispositive as to whether his rights were violated under the Fourteenth Amendment.  The SCMJ policy specifically states that "[i]nmates housed at the Men's Jail will have access to recreational opportunities, equipment, and outdoor exercise to maintain the physical, social, and emotional health of the individual. …"  (Mot., Ex. S.)  While there may have been reasonable security issues, Defendants fail to present evidence that alternative measures could not have been implemented to ensure appropriate out of cell exercise free

of restraints for maximum security inmates.  See, e.g., Spain, 611 F.3d at 200 (even where security concerns might justify limitation on permitting a prisoner "to mingle with the general prison population," such concerns "do not explain why other exercise arrangements were not made.") Defendants fail to address Plaintiff's grievances that there was adequate supervision to allow the inmates in maximum security to exercise without restraints or how other means were not feasible to allow for restraint free out of cell exercise.  Indeed, in Plaintiff's grievance dated August 4, 2007, he stated that "[a] slot allows deputies to apply & remove restraints and remain safe.  (Opp'n, Ex. C [Doc. 12].)  The fact that in 2009, after a grand jury examined the SCMJ's exercise policy and issued a recommendation to allow restraint-free out of cell exercise, SCMJ allowed all maximum security inmates, including Plaintiff (notwithstanding his commitment offense and institutional behavior) restraint free out of cell exercise supports a reasonable inference that the prior denial could have been a logistical issue rather than a legitimate penological concern.[2]  See, e.g., Allen v. Sakai, 48 F.3d at 1088 ("we cannot accept the defendants' vague reference to logistical problems as necessarily justifying, as a matter of law at the summary judgment stage, the deprivation that took place here.")

While Plaintiff admits that he was able to exercise in his cell, Plaintiff has a right to out-of-cell exercise.  Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010).  The Ninth Circuit has long recognized that outdoor exercise is extremely important to the psychological and physical well-being of inmates, Spain, 600 F.3d at 199, and the Court rejects Defendants' argument that because Plaintiff was able to and did exercise in his cell, he fails to demonstrate a constitutional violation.

The trier of fact may ultimately determine Defendants acted reasonably given all the relevant circumstances, but Plaintiff is entitled to have that issue resolved by a jury.  Thomas, 611 F.3d at 1152-1156.  Accordingly, in light of all of the above, the Court finds that Plaintiff has raised a genuine dispute of fact as to whether Defendants Puthuff, Christianson, Captain Duncan, and Lieutenant Lloyd violated Plaintiff's rights under the Fourteenth Amendment to out of cell exercise.

---

[2] Defendants also argue that Plaintiff has failed to show any adverse medical effects; however, a showing of adverse medical effects is only required where the denial of outdoor exercise is temporary.  See Lopez v. Smith, 203 F.3d 1122, 1133, n.15 (9th Cir. 2000) (en banc).  Long-term deprivations of outdoor exercise are substantial regardless of the effects. Id.

i).     Monell Claim

A local government entitled is liable under § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978); see also City of Canton v. Harris, 489 U.S. 378, 389 (1989).  A local governmental entitled also may be liable if it has a policy of inaction and such inaction amounts to a failure to protect rights.  City of Canton, 489 U.S. at 388.

To impose liability on a local governmental entity, a plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."  City of Canton, 489 U.S. at 389-91; see also Castro v. County of Los Angeles, 833 F.3d at 1073-74.

Defendant County of Stanislaus argues that the jail yard policy does not give rise for the imposition of Monell-type liability.  Defendant County of Stanislaus essentially argues that the yard policy did not amount to a constitutional violation and it was not the moving force behind any alleged constitutional violation.  For the same reasons explained above, a rational trier of fact after hearing the evidence may determine that Defendants' actions constituted a constitutional violation under the Fourteenth Amendment because the SCMJ policy required that all inmate housed in maximum security housing to wear full restraints while exercising outside of the cells.  Accordingly, the County of Stanislaus is not entitled to judgment as a matter of law.

c.     Denial of Telephone Privileges Claim

Under the Due Process Clause, detainees have a right against jail conditions or restrictions that "amount to punishment."  Bell v. Wolfish, 441 U.S. at 535-537.  This standard is slightly different from that imposed on a convicted prisoner, who may be subject to punishment so long as it does not rise to the level of cruel and unusual punishment.  Id. at 535 n.16; see also Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).  "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee."  Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538 ("A court must decide whether the disability is imposed for the

21

purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.").  If a condition or restriction imposed against a pretrial detainee amounts to punishment, then Bell applies and the pretrial detainee cannot be punished without a due process hearing.  Bell, 441 U.S. at 535; Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996) (holding "pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule").

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  To state a claim, Plaintiff must first identify the interest at stake.  Wilkinson, 545 U.S. at 221. Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue.  Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84 (1995)).  Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges a state-created liberty interest arising out of California Penal Code section 851.5.  See Carlo v. City of Chino, 105 F.3d 493, 502 (9th Cir. 1997) (holding that Cal. Penal Code 851.5 creates liberty interests protected by the Fourteenth Amendment);[3] see also Maley v. County of Orange, 224 Fed. Appx. 591, 593 (9th Cir. Mar. 7, 2007) (unpublished).[4]  Plaintiff alleges Defendants Lieutenant Suarez, Sergeant Galles, Mauldin, Meyers, Sergeant Truffa, and Williams violated California Penal Code section 851.5 by failing to provide him with any telephone privileges for approximately seventeen hours following his arrest.

---

[3] The Court in Carlo noted uncertainty regarding the correct legal standard for determining whether section 851.5 confers constitutionally protected liberty interests, noting that the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995) cast doubt on the continued applicability of the mandatory language test set forth in Hewitt v. Helms, 459 U.S. 460, 471-472 (1983).  Carlo, 105 F.3d at 498-499.  After noting a possible distinction between the standard applicable to convicted prisoners and pre-trial detainees, the Ninth Circuit concluded that "under either standard the California statute creates a protected liberty interest."  Id. at 499.  In Valdez v. Rosenbaum, 302 F.3d 1039, 1044 n.3 (9th Cir. 2002), the Ninth Circuit cited Carlo for the proposition that Helms is the applicable standard for claims brought by pre-trial detainees.

[4] Unpublished decisions issued on or after January 1, 2007 may be cited as persuasive authority pursuant to Ninth Circuit Rule 36-3(b).

Defendants submit evidence that Plaintiff was not denied access to a telephone upon intake. Following Plaintiff's arrest, he was initially placed in a safety cell as a potential suicide risk.  (Pl. Dep. at p. 82:6-17, Ex. A.)  Plaintiff was then provided a classification assessment and housed appropriately.  Deputy Christopher Williams declares that upon his arrest on February 17, 2006, Plaintiff was initially placed into a safety cell until contacted by mental health staff.  (Decl. of Christopher Williams, ¶ 6.)  It was determined by Sergeant Galles that based on statistics, "persons arrested for these offenses tend to commit suicide more often (often within the first 24 hrs) upon being arrested and placed in jail."  (Mot. Ex. U, ECF No. 71-6.)

According to the allegations in the complaint, Plaintiff was arrested on February 17, 2006, and booked into Stanislaus County Jail at approximately 5:45 p.m.  Upon his arrival, he was escorted directly to a "safety cell/rubber room", stripped naked, and provided a security jacked, contrary to the guidelines and standards required by state law.  Plaintiff was retained in the cell for approximately seventeen hours and denied every request to utilize the telephone services contrary to state law.  This occurred over a period of one day which allowed investigators more time and opportunity to conduct their investigation.

An arrestee is entitled to at least three completed telephone calls immediately upon booking, except when physically impossible, as in this instance.  See Cal. Penal Code § 851.5. Plaintiff was not denied the right to telephone privileges, but rather the right was merely delayed for less than 24 hours based on the physical circumstances of his placement in a safety cell due to the nature of the alleged commitment offense, i.e. murder of a police officer, and there is no showing of prejudice.  Accordingly, Defendants Lieutenant Suarez, Sergeant Galles, Sergeant Truffa, Mauldin, Meyers, and Williams are entitled to summary judgment on this claim.

///
///
///
///
///
///

23

### d.    Failure to Protect Claim

As stated in the Court's January 8, 2014, order finding certain claims cognizable, Plaintiff is proceeding on his failure to protect claim against Defendants Lieutenant Suarez, Lieutenant Clifton, Sergeant Truffa, Radza, Williams, Azis, Maze, and Cardoza.[5]  (ECF No.  7.)

As previously stated, Plaintiff's failure to protect claim arose while Plaintiff was a pretrial detainee.  "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Officials have a duty "to take reasonable measures to guarantee the safety" of those in their care, which has been interpreted to include a duty to provide for their protection.  Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)).  To establish a violation of this duty, plaintiff must "show that the prison officials acted with deliberate indifference."  Castro v. County of Los Angeles, 833 F.3d at 1069.  A civil detainee need only show that a prison official purposely or knowingly subjected him to a risk of serious harm that was objectively unreasonable and need not show the defendant's subjective state of mind.  Castro, 833 F.3d at 1070-71 (citing Kingsley v. Hendrickson, 135 S.Ct. at 2472-73.

The elements of a pretrial detainees Fourteenth Amendment failure-to-protect claim are as follows:

> (1)  The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2)  Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3)  The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4)  By not taking such measures, the defendant caused the plaintiff's injuries.

---

[5] The Court notes that the April 29, 2014, inadvertently omitted Defendants Suarez, Clifton and Truffa as stating a cognizable failure to protect claim; however, the controlling January 8, 2014, screening order specifically stated that Plaintiff stated a claim against Defendants Suarez, Clifton, and Truffa as well as the other Defendants.  (ECF No. 7.) Because of this omission, if the parties or party are in need of discovery, they may so request and the Court will re-open discovery for a limited period of time as to these Defendants only.

Castro, 833 F.3d at 1071.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the "facts and circumstances of each particular case."'"  Id.  Thus, "a pretrial detainee who asserts a due process claim for failure to protect" must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  Id.

Plaintiff contends and it is undisputed that he was gassed by fellow inmates on February 26, 2006, August 13, 2007, August 18, 2007, October 2, 2007, and October 4, 2007.  (See Compl. at pp. 20-21, ¶¶ 77-78; see also Pl. Dep. at 68:18-69:4, Ex. A.)

Defendants argue that SCMJ took "reasonable steps to protect Plaintiff from physical abuse" following the incidents.

However, Plaintiff contends that the maximum security x-tier at SCMJ was a hostile environment because of the animosity of other inmates toward African Americans, such as Plaintiff.

In Plaintiff's verified complaint,[6] On February 18, 2006 at approximately 11:15 a.m., Sergeant Truffa and deputy Williams escorted Plaintiff for fingerprints after being "cleared" from the safety cell.  During this time, one of the officers announced "deadman walking," and the other stated "time to see how things work around here boy."  Plaintiff was subsequently classified to maximum security, based solely on his pending charges, and was escorted by Sergeant Truffa and Williams from booking to a single cell, upon the approval of Lieutenant Suarez.

Plaintiff contends that he maximum security tier was mainly composed of "Nazi low-riders" and "Skin-heads" which are White Supremacist prison gangs who consider African-Americans to be a threat and enemy regardless of gang affiliation or lack thereof.  Plaintiff was the only African-American on the maximum security tier.  Stanislaus County Sheriff Department policy required that all maximum security inmates be secured before exiting cells at all times and during escort.  The policy of moving maximum security inmates during shower time requires one deputy secure the

---

[6] Contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

inmate and escort him to the shower while a second deputy operates the control panel to open the cell and shower doors.  (Compl. at pp. 4-5.)

On February 26, 2006, after escorting Plaintiff to the shower in restraints, Deputies Aziz and Williams ignored maximum security movement policy during shower time and released an inmate, "R.D.", from his cell without restraints.  He was holding only a bottle and other "shower materials," and physically and verbally assaulted Plaintiff with urine and feces squeezed from the bottle, while making degrading epithets towards African-Americans, stating "get off our tier fucking nigger."  Plaintiff was locked in the shower and unable to protect himself during the incident.  Plaintiff was also moved from xi-tier and housed in another tier following the incident.  (Compl. at p. 5, ¶¶ 27-29.)

With regard to Defendant Cardoza, Plaintiff alleges that on August 13, 2007, Deputy Cardoza and another unknown officer, moved Plaintiff back to maximum security, and placed him in a cell directly between a Nazi-lowrider and a Skin-head.  He was immediately "gassed"[7] by Jeremy Spray before Deputy Cardoza could leave the tier, as the hostile Whites yelled to Cardoza "get that nigger off our tier or he's gonna get it again!" to which Cardoza replied "go ahead, we'll just move ya, he ain't leavin."  The perpetrator was moved off the tier.  Deputy Cardoza sought to minimize the risk of further attack by moving Plaintiff to the cell directly in front of the control box.  During the move, Plaintiff pleaded with Deputy Cardoza to remove him from the tier and refused to enter the cell.  Deputy Cardoza responded with a threat to use the taser gun for non-compliance.  (Compl. at p. 7, ¶¶ 35-36.)

Plaintiff was subsequently gassed on August 18, 2007.  (Compl. at p. 7, ¶ 37.)  Then, on October 2, 2007, when Defendant Maze was operating the control box, Plaintiff was gassed again.  On October 4, 2007, Plaintiff was gassed while in his cell directly in front of the control box at shower time.  (Id.)

Defendants argue that Plaintiff has submitted no evidence to demonstrate that they had any knowledge or warning of a substantial risk of serious harm to Plaintiff.  However, Defendants made an intentional act of placing and/or allowing Plaintiff to be in the maximum security unit, and under the

---

[7] "Gassing" means intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any mixture of human excrement or other bodily fluids or substances.  (Opp'n, Ex. B [Doc. 4[.)

26

holding in <u>Kingsley</u> extended by <u>Castro</u>, no specific knowledge is required for a failure to protect claim brought under the Fourteenth Amendment.  <u>Castro</u>, 833 F.3d at 1071.  Defendants further argue that reasonable actions were taken following the gassing incidents.  However, whether reasonable actions were taken is not dispositive nor can such determination be made on the present record absent evidence to support such claim.  Indeed, none of the Defendants submitted a declaration in support of their argument.  Furthermore, the fact that some or all of the inmates who assaulted Plaintiff were administrated disciplinary actions following the incidents is not dispositive as to whether Defendants failed to protect Plaintiff under the Fourteenth Amendment.  On this record, the Court finds that material issues of fact remain as to whether Defendants are liable under the Fourteenth Amendment for failing to protect Plaintiff from the gassing incidents, and Defendants' motion for summary judgment should be denied.  A jury may or may not conclude that any risk of harm was not substantial enough to implicate the Fourteenth Amendment and/or that Defendants acted reasonably under the circumstances, but those are determinations which cannot be made by the Court.  Accordingly, the Court recommends that Defendants' motion for judgment as a matter of law be denied.

> **e.     Retaliation Claim**

Defendants argue that Plaintiff cannot establish that his August 13, 2007 rehousing somehow chilled him from submitting grievances or that the rehousing did not reasonably advance a legitimate correctional goal, such as preserving institutional order and discipline.

Allegations of retaliation against an inmate's First Amendment rights to speech or to petition the government may support a section 1983 claim.  <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1104 (9th Cir. 2011); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).  The five basic elements of a viable claim of First Amendment retaliation are as follows: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Silva</u>, 658 at 1104; <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

The causation element of a First Amendment retaliation claim requires the inmate plaintiff to show that protected conduct was the substantial or motivating factor underlying the defendant's adverse action. Brodheim v. Cry, 584 F.3d at 1271. "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, [citation omitted], courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987) (quoting Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985).

The only harm necessary for a claim of retaliation is the chilling effect.

> A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.' [Citations omitted.] To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.' [Citation omitted.]

Brodheim, 584 F.3d at 1271. "'[S]ince harm that is more than minimal will almost always have a chilling effect[, a]lleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety." Id. at 1270 (quoting Rhodes v. Robinson, 408 F.3d at 568 n.11).

In the operative complaint, Plaintiff alleges that Defendants Clifton, Radza and Cardoza were responsible for his rehousing from d-tier to x-tier on August 13, 2017. (Compl. at p. 25, ¶ 84.) He contends that they were motivated by "racial animus and/or in retaliation to plaintiff seeking redress regarding classification evaluations and outdoor exercise when they recklessly disregarded their duty to use due care and rehoused plaintiff on x-tier." (Id.)

Defendants argue "the documentation indicate that Plaintiff only submitted four outdoor exercise grievances prior to his rehousing on August 13, 2007. Needless to say, four grievances is not an excessive amount. Plaintiff authenticated seven grievances regarding classification evaluations and outdoor exercise that he submitted *after* the alleged retaliatory re-housing. Moreover, Plaintiff specifically admits that he was not threatened or warned by an Defendant against submitting grievances regarding classification evaluations and outdoor exercise after being re-housed on x-tier." (Mot. at 27:7-13, citations omitted and emphasis in original.)

28

Here, Plaintiff's allegations are sufficient because it is undisputed that he filed grievances regarding his classification evaluations and outdoor exercise, and the failure to protect Plaintiff from assault by other inmates would unquestionably discourage an ordinary person from filing any further complaints.  The simple fact that Plaintiff filed grievances after the alleged retaliatory action is not, itself, dispositive of a retaliation claim.  See Brodheim, 584 F.3d at 1271 (quoting Rhodes, 408 F.3d at 568 n.11.)  Furthermore, whether Plaintiff's placement in the maximum security unit served a legitimate penological interest remains disputed as there is no evidence that Plaintiff could not have continued to be housed outside of the maximum security unit.  Accordingly, the Court recommends that Defendants' motion for summary judgment on Plaintiff's retaliation claim be denied.

**f.       PLRA-Physical Injury Requirement for Emotional  and Mental Damages**

Defendants argue that Plaintiff's claims are barred, absent a showing of physical injury, by the PLRA which precludes a plaintiff from obtaining compensatory damages for mental and emotional damages resulting from Defendants' actions.   Defendants cite 42 U.S.C. § 1997e(e), enacted as part of the Prison Litigation Reform Act of 1996: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury…."  Id.  Section 1997e prohibits the recovery of compensatory damages for mental or emotional injuries unless the prisoner has suffered a physical injury that is more than de minimis.  Oliver v. Keller, 289 F.3d 623-28 (9th Cir. 2002).

The Court does not find Defendants' argument persuasive.  In Oliver, the Ninth Circuit held that section 1997e(e) does not bar claims for nominal, compensatory or punitive damages based on the violation of a constitutional right. Id. at 630.  Under Oliver, monetary damages are available for a violation of Plaintiff's constitutional rights without regard to his ability to show physical injury.  Id.; see also Haddix v. Burris, No. C-12-1674 EMC (pr), 2015 WL 1055768, at *9-10 (N.D. Cal. Mar. 10, 2015).  In the instant action, Plaintiff seeks compensatory damages for the alleged constitutional violations.  Indeed, where Plaintiff's claim arises under the First Amendment, he need not allege physical injury as a precondition for recovering damages, even if those damages are for mental and emotional injury.  See, e.g., Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he

29

can show, or any mental or emotional injury he may have incurred.  Therefore, § 1997e(e) does not apply to First Amendment [c]laims regardless of the form of relief sought.")  Furthermore, the denial of adequate outdoor exercise and failure to protect also constitute constitutional violations separate and apart from any emotional injuries.  The Court further finds that Plaintiff's direct exposure to urine and feces (gassing) by other inmates, in and of itself, constitutes more than de minimis injury.  See, e.g., Thompson v. Souza, 111 F.3d 694, 701 (9th Cir. 1997) ("The Fourteenth Amendment prohibits prison officials from treating prisoners in a fashion so brutal and offensive to human dignity as to shock the conscience.")   Accordingly, the Court rejects Defendants' argument that Plaintiff's claims are barred by the PLRA.

### f.      Qualified Immunity

(1).    Restraint Free Outdoor Exercise

As an initial matter, Defendants are not entitled to qualified immunity when sued in their official capacity.  Thus, the Court considers only whether Defendants are entitled to qualified immunity in their individual capacities.  See Eng v. Cooley, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009).

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.  While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances.  Pearson, 555 U.S. at 236 (overruling

1   holding in <u>Saucier</u> that the two-step inquiry must be conducted in that order, and the second step is

2   reached only if the court first finds a constitutional violation); <u>Mueller</u>, 576 F.3d at 993-94.

3          It has long been established by 2006, except for short term deprivations with no medical

4   effects, the Eighth Amendment (Fourteenth Amendment here) requires prison officials to provide

5   inmates with regular outdoor exercise, <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997); <u>Keenan v.</u>

6   <u>Hall</u>, 83 F.3d 1083, 1089-90 (9th Cir. 1996); <u>Allen</u>, 48 F.3d at 1087-88, and simple reliance on

7   security issues without review of alternative avenues based on potential logistic concerns does not

8   excuse the failure to do so. <u>Spain</u>, 600 F.2d at 200 ("The cost or inconvenience of providing adequate

9   facilities is not a defense to the imposition of a cruel punishment.")  Defendants fail to submit

10  evidence that alternative avenues were explored or the policy was not based on logistic concerns

11  versus a legitimate penological interest, and the law was sufficiently clear that a reasonable official

12  would have known that he could not deny regular outdoor exercise on the basis of logistics concerns.

13  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's claim regarding outdoor

14  exercise free of restraints

15          (2).    <u>Failure to Protect Claim</u>

16          Defendants argue that they are entitled to qualified immunity based on Plaintiff's failure to

17  protect claim because they had no knowledge of a substantial risk of serious harm to Plaintiff and

18  reasonable actions were taken after the gassing incidents.

19          However, as explained above, in <u>Castro</u> it was determined that a pretrial detainee's right to be

20  free from violence by other inmates was clearly established well before Plaintiff's arrest in 2006.  In

21  <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994), it was expressly determined that prison officials have a

22  duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners"

23  because they have "stripped [the inmates] of virtually every means of self-protection…."

24  Furthermore, the Supreme Court has determined long ago that pretrial detainees rights under the

25  Eighth Amendment are "at least as great as the Eighth Amendment protections available to a

26  convicted prisoner." <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983).

27          Plaintiff's evidence regarding the events in question, accepted at true at this juncture, is

28  sufficient to allow a reasonable jury to conclude that Defendants violated Plaintiff's rights under the

Fourteenth Amendment to be free of assault by other inmates.  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's failure to protect claim.

     (3).   <u>Retaliation Claim</u>

Defendants Clifton, Radza and Cardoza argue they are entitled to qualified immunity on Plaintiff's retaliation claim because Plaintiff's rights under the First Amendment were not "chilled" and his housing in the maximum security unit served a legitimate penological objections of the correction system.  (Mot. at p. 27.)

By 2006, inmates' rights to be free from retaliation against them for filing prison grievances were clear.  <u>Rhodes</u>, 408 F.3d at 567, 569-40 ("Of fundamental import to prisoners are their First Amendment rights to file prison grievances," and "the prohibition against retaliatory punishment is clearly established law in the Ninth Circuit, for qualified immunity purposes.") (internal quotation marks and citations omitted).

Here, however, assuming the facts in the light most favorable to Plaintiff, no reasonable officer would have believed that failing to protect Plaintiff from assault/gassing by another inmate because he filed grievances was lawful.  Accordingly, Defendants Clifton, Radza and Cardoza are not entitled to qualified immunity.

## III.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Defendants' motion for summary judgment for failure to exhaust the administrative remedies be denied in all respects;

2.    Defendants' motion for summary judgment on Plaintiff's denial of adequate outdoor exercise be denied;

3.    Defendants' motion for summary judgment on Plaintiff's lack of telephone privileges be granted;

4.    Defendants' motion for summary judgment on Plaintiff's failure to protect claim be denied;

5.    Defendants' motion for summary judgment on Plaintiff's retaliation claim be denied;

6.      Defendants' motion for summary judgment on the ground that the PLRA bars his claims for compensatory damages for lack of physical injury be denied; and

7.      Defendants' motion for summary judgment for qualified immunity be denied in all respects.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **February 2, 2017**

UNITED STATES MAGISTRATE JUDGE